Filed 10/13/21  P. v. Jardinez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SERGIO SOTO JARDINEZ,<br><br>    Defendant and Appellant. | D079043<br><br><br>(Super. Ct. No. 17CR002128) |


APPEAL from a judgment of the Superior Court of Monterey, Pamela L. Butler, Judge.  Affirmed in part, reversed in part, and remanded.

Lori A. Quick, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano and Jalem Z. Peguero, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

Sergio Soto Jardinez appeals a judgment of conviction after a jury found him guilty of forcible sexual penetration of a minor aged 14 years or older by a foreign object (Pen. Code,[1] § 289, subd. (a)(1)(C); count 1) (hereafter, forcible sexual penetration); sexual penetration of a minor by a foreign object (*id.*, subd. (h); count 2) (hereafter, nonforcible sexual penetration); and misdemeanor battery (§ 242; count 3). As punishment for these crimes, the trial court sentenced the defendant to prison for six years.

On appeal, the defendant argues the count 2 conviction for nonforcible sexual penetration must be reversed because nonforcible sexual penetration was a lesser included offense of forcible sexual penetration (the count 1 conviction). Additionally, he claims the entire judgment must be reversed because the trial court erroneously denied a motion for a mistrial based on prosecutorial misconduct; his trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct and for not requesting a jury admonition to cure the asserted prosecutorial misconduct; and cumulative errors deprived the defendant of due process and a fair trial.

We agree with the defendant that nonforcible sexual penetration was a lesser included offense of forcible sexual penetration. Therefore, we reverse the judgment as to the conviction for nonforcible sexual penetration (count 2) and remand the matter for resentencing. In all other respects, we affirm the judgment.

---

1    Subsequent undesignated statutory references are to the Penal Code.

## II

## BACKGROUND

### A

### *Prosecution Case*

At all times relevant to these proceedings, the victim, who we will refer to as Jane Doe, was 15 years old and the defendant was 20 years old. R.M. is Jane Doe's mother and C.J. is the defendant's mother. R.M. and C.J. are first cousins; therefore, Jane Doe and the defendant are second cousins.

In August 2017, R.M. was homeless and her three children, including Jane Doe, moved into C.J.'s home. Several extended family members lived there as well. Jane Doe and her siblings moved into the garage with the defendant and the defendant's brother. The defendant slept on a bed in the garage, Jane Doe and the defendant's brother slept on the garage floor, and Jane Doe's siblings slept on a couch in the garage.

A few days after Jane Doe and her siblings moved into C.J.'s home, C.J. hosted a going-away party for a relative. The defendant did not attend the party and instead went to a different party.

Jane Doe testified she went to sleep on the defendant's bed that evening because she was tired of sleeping on the ground. She testified she was awoken by the defendant kissing her, hugging her, and trying to turn her body towards him. She testified he grabbed her breasts and her vagina underneath her clothing and underwear, and he penetrated her vagina with his fingers. She testified he also grabbed her hand and put it on his erect penis underneath his clothing.

Jane Doe testified she remained still during the encounter, pretended to be asleep, and feigned waking up only when he put her hand on his penis. She testified the defendant asked whether she wanted to have sex and she

3

said no. She testified the defendant fell back asleep and she went into the restroom to try to contact her parents. She testified she was unable to reach R.M., but she reached her boyfriend and asked him to come with his mother to pick her up. Jane Doe testified she woke her sister up and they left C.J.'s home at about 6:00 a.m. She testified she met up with her boyfriend and his mother, who drove her to a parked vehicle in which R.M. was sleeping. Jane Doe then told R.M. the defendant raped her.

R.M. testified she attended the going-away party on the night of the sexual assault, said goodnight to her daughters, and went to sleep in her vehicle at about 1:00 a.m. She testified Jane Doe's sister woke her up the next morning by knocking on her vehicle at 6:30 or 7:00 a.m. She testified she exited the vehicle and saw Jane Doe sitting in another vehicle with a friend. Jane Doe was crying and she told R.M. the defendant raped her. R.M. asked what she meant and Jane Doe again stated the defendant raped her. R.M. had two missed calls on her cell phone from Jane Doe's cell phone. The missed calls were placed at 5:00 a.m. that morning.

R.M. notified the police about the incident almost immediately and the police arranged for Jane Doe to place a recorded pretext call to the defendant. A videotape of the pretext call was played for the jury.

During the pretext call, Jane Doe asked the defendant several times why he kissed her, put his fingers inside her vagina, and made her grab his penis. The defendant did not deny the accusations; instead, he repeatedly apologized and stated he was intoxicated. For instance, Jane Doe asked the defendant, "W- why were you kissing me though?" The defendant responded, "Well, I don't know, fool. I fucked up. Shit." Jane Doe then asked, "Why were you touching you know where?" The defendant replied, "Well, I don't know. I said I fucked up, my nigga." At another point during the call, Jane

4

Doe asked, "[W]hy were you fingering me?"  The defendant answered, "Oh my God.  'Cause I'm telling you, bro, I was, like, I had a drink.  Like, I had a drink when, like - like, that's what I'm telling you.  I'm sorry."  Later on, Jane Doe asked, "Well, why did you put your fingers in my vagina, dude?  You weren't even that drunk."  The defendant replied, "God, I'm t- I'm trying to be, like, as – as real … as I can ….  I just wanted to talk to you, bro.  And, like, and apologize, my nigga.  'Cause I feel bad, fool.  Like, I h- I fucked up, like, for reals feel bad.  'Cause, like, yo- you're my cousin and shit.  And – and I shouldn't have done that.  And, well, like, it was just bad timing."

Sexual assault response team (SART) examinations were performed on Jane Doe and the defendant.  During the SART examinations, reference swabs were collected from the insides of Jane Doe's cheek and the defendant's cheek, and evidentiary swabs were collected from their hands and other locations on their bodies.  A senior criminalist with the Department of Justice conducted DNA analyses using the reference swabs and evidentiary swabs.  He determined the evidentiary swab collected from Jane Doe's left-hand fingers showed DNA from a foreign contributor and the defendant could not be excluded as the source of the foreign DNA.  He also determined the evidentiary swab collected from the defendant's left hand showed a DNA mixture with three contributors and there was very strong reason to conclude Jane Doe was one of the DNA contributors.

After the SART examinations were complete, police officer Raul Rosales interviewed the defendant.  Audiotape of the interview was played for the jury.  During the interview, the defendant stated he came home from a party after consuming alcohol and marijuana.  He stated he was "kinda buzzed" and "fucked up."  He said he laid down in his bed and Jane Doe started cuddling up against him during the night.  He stated they kissed one another

5

and he felt her breasts and butt.  He said he "grabbed" her vagina, but did not put his fingers in her vagina.  The defendant told the officer he realized at some point he was having sexual contact with his cousin and "didn't feel right" about it, so he stopped and moved to the other side of the bed.

A disputed issue at trial was whether the defendant perpetrated the sexual assault by means of force or fear—a finding necessary to sustain the forcible sexual penetration conviction.  Jane Doe testified that prior to the sexual assault, the defendant told her he sold cocaine, owned guns, and was starting his own cartel.  According to Jane Doe, the defendant told her he once shot at two guys who came up next to him at a red light and threw gang signs at him.  Jane Doe testified the defendant showed her pictures of his guns and a social media post from a police department that stated the defendant was arrested for the shooting.  She testified she believed the defendant and felt he was someone with whom one would not want to mess.  She testified she was scared "of what he could possibly do if [she] did try to … communicate with someone about" the sexual assault.

B

*Defense Case*

The defendant testified on his own behalf.  He testified he went to a party with his girlfriend the night of the alleged sexual assault, where he consumed five beers, smoked synthetic marijuana, and had sex with his girlfriend.  He testified he returned home and got into his bed, which was empty when he got into it.

The defendant testified he was awakened by Jane Doe touching him and putting her arm around his waist.  He testified they kissed one another, Jane Doe touched his penis, and he slid his hand in her underwear.  The defendant testified he "was touching her in her — in her female part."  When

6

asked whether he inserted his fingers in Jane Doe, the defendant stated he did not do so. He also testified he touched only the "outer part" of her vagina. The defendant testified he stopped the sexual encounter because he "knew it wasn't appropriate" and he "would not have felt right had [he] continued." He testified he suggested to Jane Doe that they tell R.M. what happened to "clear things up," and Jane Doe told him to keep the incident between them.

With regard to whether the defendant used force or fear to perpetrate the sexual assault, the defendant testified he never sold or trafficked drugs, he never shot at human beings, and he never told anyone either of those things. He testified he sometimes used the word cartel and he even emblazoned the phrase "corona cartel," or "crown cartel," on some of his clothing. However, he testified he did so because he was a horse enthusiast and the phrase "corona cartel" refers to the blood line of certain horses.

C.J. and another family member testified as defense witnesses as well. They testified Jane Doe argued with C.J. prior to the alleged sexual assault. According to C.J. and the family member, Jane Doe left the house without obtaining C.J.'s permission. C.J. told R.M. about the incident and Jane Doe was upset C.J. disclosed the incident to R.M.

C

*Verdict and Sentence*

After deliberations, the jury found the defendant guilty of all three charged offenses. The trial court sentenced the defendant to state prison for the lower term of six years for the count 1 forcible sexual penetration

conviction. It imposed and stayed the lower term of 16 months for the count 2 nonforcible sexual penetration conviction pursuant to section 654.[2]

III

DISCUSSION

A

*Lesser Included Offense*

The defendant was convicted of forcible sexual penetration in violation of section 289, subdivision (a)(1)(C), and nonforcible sexual penetration in violation of section 289, subdivision (h).[3] He claims nonforcible sexual penetration is a lesser included offense of forcible sexual penetration and, therefore, his nonforcible sexual penetration conviction must be reversed. The Attorney General agrees with the defendant.

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct." (*People v. Reed* (2006) 38 Cal.4th 1224, 1226, italics in original.) "A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' " (*Ibid.*) "When

---

[2] The record does not indicate whether any sentence was imposed for the count 3 conviction or whether the conviction was dismissed as a lesser included offense. On remand, the trial court may wish to clarify during resentencing whether the count 3 conviction was dismissed.

[3] Section 289, subdivision (a)(1)(C) proscribes nonconsensual acts of sexual penetration against minors aged 14 years or older that are accomplished "by means of force, violence, duress, menace, *or* fear of immediate and unlawful bodily injury on the victim or another person …." (§ 289, subd. (a)(1)(C), italics added.) The statute's disjunctive phrasing indicates a defendant may violate the statute without necessarily using force. But, for ease of reference, we refer to the crime prohibited by section 289, subdivision (a)(1)(C), as forcible sexual penetration.

8

a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736 (*Sanders*).)

"To ascertain whether one crime is necessarily included in another, courts may look either to the accusatory pleading or the statutory elements of the crimes.  When, as here, the accusatory pleading incorporates the statutory definition of the charged offense without referring to the particular facts, a reviewing court must rely on the statutory elements to determine if there is a lesser included offense.  [Citations.]  'The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater.  [Citation.]  In other words, " '[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " ' " (*People v. Robinson* (2016) 63 Cal.4th 200, 207.)

We agree with the parties that nonforcible sexual penetration is a lesser included offense of forcible sexual penetration under the statutory elements test.  To obtain the forcible sexual penetration conviction, the prosecution had to prove:  (1) the defendant committed an act of sexual penetration; (2) the act of sexual penetration was accomplished by use of a foreign object, substance, instrument, or device, or by any unknown object; (3) the act of sexual penetration was accomplished against the victim's will; (4) the act of sexual penetration was accomplished by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on

9

the victim or another person; and (5) the victim was a minor aged 14 years or older.  (§ 289, subds. (a)(1)(C), (k); see CALCRIM No. 1045.)

To obtain the nonforcible sexual penetration conviction, the prosecution had to prove:  (1) the defendant participated in an act of sexual penetration; (2) the act of sexual penetration was accomplished by use of a foreign object, substance, instrument, or device, or by any unknown object; and (3) the victim was a minor.  (§ 289, subds. (h), (k); see CALCRIM No. 1102.)

The crime of forcible sexual penetration included all the same elements as the crime of nonforcible sexual penetration—i.e., the defendant's commission of an act of sexual penetration, the accomplishment of the sexual penetration by use of a foreign object, substance, instrument, or device, and a minor victim—as well as additional elements.  Thus, nonforcible sexual penetration was a necessarily included offense of the greater offense of forcible sexual penetration, and the conviction for nonforcible sexual penetration must be reversed.  (See *Sanders, supra*, 55 Cal.4th at p. 736.)

The People urge us to reverse the nonforcible sexual penetration conviction and modify the judgment on appeal to strike the fines and fees associated with that conviction.  They claim "the matter need not be remanded for resentencing" because the trial court imposed and stayed the punishment for the nonforcible sexual penetration conviction and, as we will discuss below, the remainder of the judgment will be affirmed.  We disagree.

"[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893; see *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1259 ["upon remand for resentencing after the reversal of one or more subordinate counts of a felony conviction, the

10

trial court has jurisdiction to modify every aspect of the defendant's sentence on the counts that were affirmed, including the term imposed as the principal term"].) Here, we are reversing the judgment only as to the nonforcible sexual penetration conviction. However, we will remand the matter for a full resentencing on all counts so the trial court may account for any changed circumstances since the original sentencing.

## B

### *Motion for Mistrial*

Next, the defendant argues the trial court erroneously denied a motion for a mistrial based on alleged prosecutorial misconduct that occurred during the direct and redirect examinations of officer Rosales. He claims a mistrial was warranted because the prosecution elicited evidence that the defendant was arrested and charged in a separate case with brandishing a firearm, in violation of a pretrial in limine ruling. As we will explain, the alleged misconduct did not produce incurable prejudice damaging the defendant's chances of receiving a fair trial. Therefore, no mistrial was warranted.

### 1

### *Additional Background*

In a separate criminal case (Case No. SS170742A), the defendant was arrested and charged with brandishing a firearm at an occupant of a vehicle (§ 417.3). In connection with that case, the defendant stated he brandished an unloaded firearm at a person who pulled up in a vehicle next to him and flashed gang signs at him. The brandishing case was dismissed for reasons that are not apparent from the record.

In the present case, the defendant moved in limine to exclude evidence of the brandishing case. He argued the evidence should be excluded under

11

Evidence Code section 352 because it was unduly prejudicial and would result in a "mini trial" regarding the brandishing case.

The trial court ruled it would not be "trying the brandishing" case, and opined that it did not believe the People intended to introduce evidence to prove the allegations of the brandishing case. On the other hand, the court ruled that to the extent the defendant told Jane Doe about the alleged facts underlying the brandishing case, and thereby caused her to fear the defendant during the sexual assault, evidence concerning the defendant's statements was relevant and admissible. Further, the court admonished the defense that evidence of the brandishing case could become admissible if the defense opened the door to such evidence, stating: "If … you cross-examine [a witness] and imply that [the defendant has] never been charged with anything, he's never committed these things and you make it relevant, that's going to be different."

During the direct examination of officer Rosales, the prosecution played an unedited audiotape of officer Rosales's post-arrest interview of the defendant. The following discussion took place during the interview:

> ROSALES: How many times have you told [Jane Doe] that … that you own guns, and you sell drugs?
>
> JARDINEZ: That I owned guns and sell drugs? She probably heard. But I don't sell drugs. I used to own a gun. I had uh… I had uh… uhm… It was… *This is another case,* but other than that, like, I had… I had uhm… Like, *I had my permit to have my own gun, and they took it away.* So….
>
> ROSALES: So, you used [to] own a gun?
>
> JARDINEZ: Yeah.

(Italics added.) After this portion of the audiotape was played, defense counsel asked for permission to approach the bench "[b]ased on in limine

12

discussions." The court allowed the request and an unreported exchange took place off the record.

After the prosecution completed its direct examination, the defense cross-examined officer Rosales. The following colloquy took place during the defense's cross-examination of officer Rosales:

Q. When you arrested my client, you arrested him for charges involving these allegations of sexual acts, correct?

A. Yes.

Q. Did you find any evidence of any drug dealing, shooting people, or any other kind of crime?

A. No.

[¶] . . . [¶]

Q. You have any concern that you might have, I don't know, the young – the next young Felix Gallardo living in [your city]?

[Objection sustained.]

Q. You find any drugs in the residence?

A. I didn't go in the residence.

Q. Find any drugs on my client?

A. No.

Q. Any evidence of drug dealing on my client?

A. No.

Q. Any evidence of any cartel activity?

A. The only evidence that [sic] when I conducted a records check on him was that he was out on --

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Well.

13

[DEFENSE COUNSEL]: All right.

Q. Did you find any evidence that he was connected to drug dealing of any kind?

A. I wasn't investigating a drug dealing case. I was investigating a sexual assault case. So, no, I wasn't looking for evidence in connection with a cartel or a drug dealing investigation.

Q. But surely, if you or any of your other officers involved in the investigation thought that really you were dealing with somebody like that, you would have made sure somebody investigated, right?

A. Um, there was no evidence of drug dealing.

Q. Or any other cartel activity or anything like that?

A. Correct.

Thereafter, the prosecution began its redirect examination of officer Rosales. The following exchange took place during the redirect examination:

Q. Officer Rosales, you testified on cross-examination that you did not during your investigation receive any evidence of the defendant involved in a shooting; is that right?

A. I'm sorry. Involved in a shooting?

Q. Is that the answer to that question?

A. I'm sorry. Can you repeat the question.

Q. The defense attorney asked you if during the course of your investigation you obtained any evidence regarding drugs; is that right?

A. Yes.

Q. And he also asked you if you received any evidence involving a shooting; is that right?

A. Um, I don't recall the word 'shooting.'

14

Q. Did you during the course of your investigation receive any evidence from the defendant being involved in a shooting?

A. No. The only thing –

[DEFENSE COUNSEL]: Your Honor, objection.

THE COURT: The answer remains. Next question.

Q. Did you interview the defendant and discuss whether he was involved in a shooting?

A. No.

Q. During your station interview with the defendant, do you recall discussing with him the specifics of a brandishing situation?

[DEFENSE COUNSEL]: Your Honor, motion.

A discussion ensued between the court and counsel outside the presence of the jury. During the discussion, defense counsel moved for a mistrial based on the prosecution's alleged violations of the court's in limine ruling. He argued the prosecution violated the in limine ruling by playing an unedited version of officer Rosales's post-arrest interview of the defendant and, furthermore, by questioning officer Rosales about brandishing on redirect. The court deferred consideration of the motion and the prosecution concluded its redirect examination without asking any further questions. Later the same day, the court denied the mistrial motion and opined the defense's cross-examination of officer Rosales opened the door to the prosecution's redirect questions.

## 2

### *Analysis*

"A court should grant a mistrial ' "only when a party's chances of receiving a fair trial have been irreparably damaged." ' [Citation.] This

generally occurs when ' " ' "the court is apprised of prejudice that it judges incurable by admonition or instruction." ' " ' [Citation.] We review the trial court's refusal to grant a mistrial for abuse of discretion." (*People v. Johnson* (2018) 6 Cal.5th 541, 581.) "Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1094.)

Applying these standards, we conclude the court did not abuse its discretion in denying the defendant's motion for a mistrial. The defendant moved for a mistrial, in part, because the prosecution played an audio recording in which officer Rosales asked the defendant whether he told Jane Doe he owned guns and sold drugs; in response, the defendant gave a stumbling and at times incoherent response, in which he said, "[t]his is another case," and "they" took away his gun permit.

The prosecution's apparently inadvertent inclusion of the defendant's statement in the unedited recording did not irreparably damage the defendant's chances of receiving a fair trial. The defendant's interview response was vague and did not suggest he was arrested or charged with a particular crime, let alone brandishing a firearm—the subject of the court's in limine ruling. It did not specify what "another case" meant, or who "took away his gun permit." Further, the statement was fleeting and constituted just six lines from the 21-page interview transcript. A mistrial was not warranted based on the admission of the brief and ambiguous statement from the defendant's interview with officer Rosales. (See *People v. Edwards* (2013) 57 Cal.4th 658, 703 [prosecutor's "brief and isolated" reference to defendant's arrest for uncharged murder did not compel mistrial]; *People v. Franklin*

16

(2016) 248 Cal.App.4th 938, 956 ["none of the three vague and fleeting references to appellant's criminal history resulted in incurable prejudice or irreparably damaged appellant's chance of obtaining a fair trial"].)

The questions the prosecution posed in its redirect examination of officer Rosales did not compel a mistrial either. "Under the doctrine of 'opening the door,' one party may render otherwise inadmissible evidence admissible by introducing the topic selectively such as to leave a misleading impression." (*People v. Kerley* (2018) 23 Cal.App.5th 513, 553.) Here, the defense opened the door to the prosecution's redirect questions by asking officer Rosales on cross-examination whether he found evidence the defendant was involved in criminal conduct or cartel activity—questions that clearly were intended to, and did, give a selective impression the defendant was *not* involved in criminal conduct or cartel activity. (See *People v. Friend* (2009) 47 Cal.4th 1, 35 ["Because the defense opened the door to the subject by eliciting defendant's prior felony convictions in his direct testimony, the prosecutor properly could raise the issue in cross-examination."].)

On appeal, the defendant contends the defense did not open the door to the prosecution's redirect questions because "[t]he only questions defense counsel asked Officer Rosales on cross-examination concerned whether in his arrest of [the defendant] he had discovered any evidence of *drugs* or *drug dealing*." (Italics added.) According to the defendant, "[i]t was clearly the prosecutor who first mentioned anything involving *firearms*." (Italics added.) The defendant is mistaken. On cross-examination, defense counsel asked officer Rosales: "Did you find any evidence of any drug dealing, *shooting people, or any other kind of crime*?" (Italics added.) In our view, the defense's specific reference to "shooting people," as well as its broad reference to "any

17

other kind of crime," opened the door to the prosecution's subsequent shooting and brandishing-related questions on redirect.

The prosecution's redirect questions were unlikely to result in incurable prejudice for another reason. When the prosecution asked officer Rosales whether he discovered evidence that the defendant was involved in a shooting, officer Rosales replied in the negative, and defense counsel interrupted officer Rosales before he could expand on his answer. Then, when the prosecution asked whether officer Rosales had ever discussed a "brandishing situation" with the defendant, the defense requested a sidebar before the witness could respond. After the sidebar, the prosecution ended its redirect examination and officer Rosales never answered whether he discussed a "brandishing situation" with the defendant. Thus, officer Rosales rendered no damaging testimony suggesting the defendant had been charged with brandishing or engaging in any other criminal conduct.

For both of these reasons, we conclude the trial court did not abuse its broad discretion when it denied the defendant's motion for a mistrial.

## C

### *Ineffective Assistance of Counsel*

As noted, defense counsel requested an off-record discussion with the trial court after the prosecution played the unedited recording from officer Rosales' post-arrest interview with the defendant, and it moved for a mistrial during the prosecution's redirect examination of officer Rosales based on the prosecutor's alleged failure to abide by the trial court's in limine ruling. However, defense counsel never objected to the interview recording or the redirect questions based specifically on prosecutorial misconduct. Defense counsel also did not request that the court admonish the jury to disregard the purportedly objectionable portions of the recording or redirect testimony.

18

On appeal, the defendant contends his trial counsel was ineffective for failing to object to the interview recording and the redirect questions based specifically on prosecutorial misconduct. He claims his counsel was also ineffective for failing to request a jury admonition to cure any prejudice resulting from the allegedly objectionable recording and redirect questions.

To prove ineffective assistance of counsel, a defendant must "demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result." (*People v. Dennis* (1998) 17 Cal.4th 468, 540–541; see *Strickland v. Washington* (1984) 466 U.S. 668, 687.) In assessing prejudice, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." (*Harrington v. Richter* (2011) 562 U.S. 86, 111.) Instead, the question is "whether it is 'reasonably likely' the result would have been different." (*Ibid.*)

We need not determine whether defense counsel was ineffective because, assuming without deciding he was ineffective, the defendant has not established a reasonable probability of a more favorable result but-for his counsel's ineffective performance. The defendant's statements during the interview were so vague and fleeting they almost certainly had no impact on the judgment. As for officer Rosales' redirect testimony, he testified he had obtained no evidence regarding any shooting and there was no evidence the defendant was involved with drugs. It is more likely this testimony *helped* the defense case than hindered it. Additionally, officer Rosales rendered no

19

testimony at all about the brandishing case or the facts giving rise to that case because the defense moved for a mistrial before he could do so.

Further, the jury instructions minimized the possibility of prejudice arising from the recording or the prosecutor's redirect questions. The court instructed the jury with CALCRIM No. 316, which stated the jury could consider a witness's commission of another crime or misconduct only for the purpose of evaluating the witness's credibility. It instructed the jury with CALCRIM No. 222 as well, which stated that nothing the attorneys said was evidence, and the court admonished the jury not to assume something was true just because an attorney asked a question suggesting it was true. "We presume the jury followed these instructions." (*People v. Chhoun* (2021) 11 Cal.5th 1, 30.)

Given this record, it is not reasonably probable the defendant would have obtained a more favorable outcome had his counsel objected to the evidence at issue on prosecutorial misconduct grounds or requested a jury admonition.

D

*Cumulative Error*

The defendant contends the cumulative effect of the asserted errors deprived him of due process and a fair trial. As the basis for his cumulative error argument, the defendant relies on the court's ruling on the motion for a mistrial, his counsel's failure to object due to prosecutorial misconduct, and his counsel's failure to request a jury admonition.

We have found no error in the court's mistrial ruling and we have assumed error with regard to his counsel's performance, but found the assumed error was not prejudicial. The assumed error, standing alone, does not warrant reversal of the judgment. (See, e.g., *People v. Scully* (2021) 11

Cal.5th 542, 613 ["the cumulative effect of the three assumed errors and one harmless error does not warrant reversal"]; *People v. Duong* (2020) 10 Cal.5th 36, 75 [" 'We have found no error, and where we assumed error, we have found no prejudice.  Nor do we discern cumulative prejudice.' "].)

IV

DISPOSITION

The judgment is reversed as to the conviction for sexual penetration of a minor by a foreign object (Pen. Code, § 289, subd. (h); count 2) and the matter is remanded for resentencing.  In all other respects, the judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:


GUERRERO, J.


DO, J.

21